Good morning, Your Honors. May it please the Court, my name is Kristen Boyles and I represent the appellant farm workers in this case. Under the Federal Pesticide Law, known by the acronym FIFRA, challenges to the re-registration of pesticides by farm worker and citizen groups are properly brought in the District Court, not in the Court of Appeals. I will discuss three issues this morning, Your Honors, to explain how the District Court erred in dismissing this case for lack of jurisdiction. Before you do that, why didn't you cover yourself by filing in both courts? I certainly wish we did now, Your Honor, but at the time that we brought this case, there was no question that we should have brought it, in our minds, in the District Court. The Environmental Protection Agency at that point in time agreed with us that jurisdiction was proper in the District Court, and we looked at the Court's precedent. Why did they agree with you? They have stated several times before this appeal, Your Honor, that they believe that challenges to re-registration decisions took place in the District Court. They changed their position in this appeal. Did they state this in some public forum? Yes, sir. It was stated in front of the District Court in this case, Your Honor. The original motion to dismiss was brought by the intervening pesticide manufacturers and not supported or at least not joined by EPA. But more importantly, Your Honor, we had looked at the precedent and decided that this was the kind of case that fit into the default overarching jurisdictional statute under Section 16A, that FFRA sets up the statute where 16A, District Court review, is the default, and you only get to 16B with its very specific requirements for jurisdiction if certain things are met. Well, it's after a public – it seems to me the case boils right down to after a public hearing. I think it does, Your Honor, and I think the question is then, can a comment period be a public hearing? Well, why not? Well, because you don't have any of the things that you have in what we normally consider a public hearing. You don't have – Let me tell you my experience with a public hearing, and you'll see you're dealing with someone whose own experience runs against your treatment. I once was chairman of a redevelopment authority. We had to have a public hearing required by federal law before putting our redevelopment plan into operation. You know what the public hearing consisted of? We had a notice that we'd have a big meeting in the local gym. Anybody who had a thought on the plan could come and speak. They all came and spoke. We didn't say a word. There were no briefs. That was a public hearing in my – into that statute. So you can see I'm prejudiced. I thought that was a public hearing. I have an uphill battle, Your Honor, I can see, but I don't think that is a public hearing the way the statute contemplates a public hearing. What we have here is simple notice and comment. All of the cases talk about public hearings where you have the involvement of an administrative law judge, where you have briefs where the parties represent both sides and respond. You have an order that follows from an EPA administrator. Those are the indicia of a public hearing. And it matters more than just keeping my case in court, Your Honor, for two really important reasons. The first is all of those preliminary matters which get taken – take place in an administrative proceeding or in the district court are really important to these type of cases. Figuring out the scope of the record, figuring out the extent of the record, expert declarations, issues of finality and standing, those things are much better handled at the district court level, which is used to motions practice, than in front of this court in the first instance without any other – I like what you're saying because I've been thinking about pretty close to that myself. If you take what happened here when the final decision was made and you ship it up to us, all we've got is just a lot of stack of papers. We've got a long decision. There hasn't been a decision made where the facts are laid out and the law is stated and it's in manageable form. That is not the kind of record that I think ought to go to a court of appeals. On the other hand, what happened here seems to me better suited to be taken to the district court and for the district court to conduct – it ought to be the district court's job then to put all of this together, take the evidence that's needed, put it in a manageable form, put it in a clear order, put the record together, and then an appeal can be taken to our court. And that seems to me to be the orderly way to handle it. And it seems to me that the notice and comment procedure followed by the EPA here is arguably insufficient. And I've never – every environmental case that I've ever been involved in, either as a district judge – and I've handled at least two huge environmental cases that I presided over and watched over under consent decrees for 20 or more years, were – you had decisions, you had records, you had interim appeals, and I don't see how you could take all that stuff and dump it on a court of appeals. And expect them to manage a situation like that. I mean, that's just a thought I had about it. Well, Ms. Boyle, she's made your argument clear. Yes, Your Honor. Let me – did I do that? A little bit, sir. Let me ask you this. How do you get around what may be unfortunately for you the law of the Ninth Circuit in cancellation proceedings? What's different between – let's see if we are on the same basis. Northwest Food Processors says you don't have to have a live hearing, you don't have to have an administrative law judge, you don't have to have all those things that you mentioned for cancellation proceedings to have a hearing in a 16B case. Now, why isn't that the same here in re-registration as cancellation? First, Your Honor, I agreed with you for a minute there and then started to disagree about the interpretation of Northwest Food Processors. But we embrace Northwest Food Processors. We think that supports our position here. Because Northwest Food Processors was a case about a cancellation and there had been a hearing there. There really was no question that there had been a hearing. There was an ALJ proceeding. There were objections and responses. There was an appeal then internally to an EPA administrator. There were all of the quasi-adjudicatory processes that you would see in a hearing. The question from the appellants in that case was, well, we didn't get oral argument. And this court properly said, we're not going to nitpick the details of the kind of hearing that you got. You got a hearing. You had what we all think of as a hearing. And in fact, the court said, even in the case, and it's cited in our brief, the quote is about the opportunity to submit written briefs. Well, briefs are not the same thing as comments, Your Honor. You know that briefs are argument and reply and response. So this case, that Northwest Food Processors case is very different from this case, where all we have is the opportunity to submit comments. We do have a large record. Thousands of pages. Thousands of pages, Your Honor. And thousands of pages, many of which are going to be irrelevant to this issue. The kind of hearing that we would have in a quasi-adjudicatory session or a district court would narrow that down for the court. But of course, if you were here in the Court of Appeals, you would narrow it down to a record that would be an excerpt of record. You wouldn't give us the thousands of irrelevant pages. I would hope not. You would distill it. You would distill it, Your Honor. Let me go back to another point about the size of the record, though. And this actually is almost more important than whether we live or die today. Right now, after the district court opinion, we still do not know where these kind of cases have to be filed in every instance. Because the standard seems to have been from the district court, which is the size of the record controls. You'll know after our decision. You'll know. I hope so, Your Honor. I would ask for that. I'm living and dying. How many farmworkers are killed by the pesticide? In 2001, Your Honor, EPA found that this pesticide posed unreasonable risks of poisoning to farmworkers and said it needed to be canceled. How many are killed? Sir, I don't know the answer to that. But it's in the administrative record around pages 40 through 43 of our excerpts of record. Well, I think, you know, we're dealing with a very technical procedure, procedural question. But it does help to know what are the merits in the background. You don't know how many people are in there? I don't know how many people, Your Honor. It is, it is, AZM is among the highest poisoner in the United States. And the EPA said that it was unsafe for continued use. And then the users. Well, I'm sure you wouldn't drink it. It's not even safe to be around, sir. You don't want to be anywhere near this poison while it's being applied. But you have to use. And people have been poisoned for years. Well, how many? I don't know. I don't know the exact number, sir. I apologize. I can get that for the court. It is in the record. It's background. It won't decide the case, but it's relevant background that won't decide the case. I think the relevant background, sir, is that the EPA, there's no, nobody is quarreling about how dangerous this poison is. The quarrel is about how long we're going to continue to expose people to this poison. And, but then we never got to have that argument in the district court. Judges are apt to get more excited if you tell us how many people are killed every year by something. Yes, sir. Yeah, well. But the district court. We know this AZM is highly toxic. That's a given, isn't it? Yes, sir. And the EPA found that even though that's the case, that the economic benefits of using that material outweigh the health costs. And I don't, you know, that's kind of hard for me to fathom or accept. And it's as if we're saying, well, so 100 people die, and so there's some cost for that. But we get better crops or whatever we get, and we make a lot more money, so. And you have a lot more farm workers employed. Employed, yeah. So that's probably the Chicago school of benefits. But we don't even know those. None of that is here, because nobody gave us the background. The issue of the size. In other words, we like to know what's going on in the real world, you know. Sir, I'm sorry. I believe it's in our opening briefs. I just don't remember it this instant. The focus here on the size of the record has created problems for other district courts in similar. Well, we won't do that. I can show you that. Thank you, Your Honor. Because it is important to know where these cases should be brought in the future, that we bring them either straight here or not. And it shouldn't turn on the size of the record a decision that only can be made after the agency submits the record. It turns the process on its head. And as District Court Judge Fogel found in California, he couldn't rule on the motion to dismiss because he hadn't seen the administrative record yet, which is just entirely upside down for how jurisdictional statutes are supposed to work. And we believe that both the Northwest Food Processor case and the D.C. Circuit case in Costill, which involved cancellation proceedings, which had hearings, are very, very different from what we've had here where it's just simple notice and comment. Thank you. I'll save my remaining time, sir. Well, I didn't know we could do that, huh? May it please the Court. My name is Robert Stockman, here on behalf of the United States. I intend to speak for approximately 10 minutes, and the interveners will split the remaining time. Well, Robert, how many people died as a result of this product? The answer, Your Honor, first, the merits are not before the Court, but EPA is not certain what the exact number is. However, it is not particularly large in the sense that EPA agrees this is a dangerous chemical. In fact, the final decision phases out all use in six years. In 2000 What if it's dangerous and people are dying? Why don't we do it now? Congress has said that in order to assess whether a risk is unreasonable, EPA has an obligation to consider the environmental, economic, and social costs and benefits of the use of the pesticide. What does that mean? You want to see how many people die and whether that sacrifice of life is worth whatever economic benefits are derived from enhanced crop production? EPA is supposed to, and in fact required by the statute to consider crop production, what effect cancelling pesticides would have, and consider also the cost to workers. Does EPA consider the fact that the pesticides in the ground kill off all the microorganisms? Well, EPA is very considered about the ecological risks as well, and that is one of the things. Did they study that? They studied it extensively in this case, Your Honor. How deep in the soil? I don't know how deep in the soil. That's important. The primary risk concern here is to aquatic life, but ecological risk. But the point, Your Honor, is that EPA did numerous risk assessments. They published notice of them in the Federal Register. They offered the public the opportunity to be heard, to participate. What year was this? The first risk assessment was in 1998, I believe. But there have been numerous risk assessments over the years. There was an interim re-registration eligibility decision in 2001. There was another risk assessment, and then another benefits assessment, and then the final proposed decision in 2006. And in each stage, EPA solicited public comments, gave the opportunity for people to make their views heard through writing, and indeed plaintiffs robustly participated. They filed comments, scientific studies. They filed motions that they had filed in district court in ongoing litigation as attachments. Mr. Stockman, would you kindly address Ms. Boyle's position that the case of Northwest and Castle are grist in her mill, and help the determination that what occurred here was not a hearing, and what occurred in Castle and Northwest was a hearing? I would be happy to address that, Your Honor. In both cases, this court in Northwest Food Processors said that a public hearing amounts to the opportunity for people to participate by submitting written briefs, and the opportunity and the development of a record for review. That occurred here. In Northwest Food Processors, EPA did not have oral argument. They did not have cross-examination of witnesses. All they had was a settlement with the registrants to cancel that pesticide. They provided people with the opportunity to file exceptions to that settlement, they considered them, and then they canceled it. It was in many ways very analogous to a notice and comment proceeding. Moreover, Humane Society, also a D.C. Circuit case, which this court relied upon in Northwest Food Processors, was a notice and comment proceeding. In that case, there were FIFRA Section 5 experimental use permits. And EPA held a notice and comment. Are you telling me that in either Northwest Food Processors or in Castle, was there an administrative law judge who made findings and which findings could be forwarded to a higher court? In both Northwest Food Processors and in Castle, there was an ALJ, and it was reviewed by the administrator. But here, there were agency personnel, and that in turn was reviewed by the administrator. Moreover, in Humane Society, there was an ALJ in a separate proceeding regarding the same pesticide. But the only opportunity to challenge the permits directly in Humane Society was through notice and comment. There was no ALJ reviewing that decision, and they were not reviewing an ALJ's decision or an administrative order in Humane Society. So it would create a circuit split to suggest that the ALJ's role in this is the crucial aspect of a hearing. Moreover, a public hearing has been interpreted by the Supreme Court to mean the opportunity to comment, to provide one's input, and then the development of a record and notice of that. And in that case, it was what? I believe it's cited in Castle, and I believe it was East Florida, but I forget the exact pin site, Your Honor. And it was a different context. But yeah, what's adequate depends on the context. It does depend on the context. But the court has previously held in Northwest Food Processors that in this context, a public hearing requires the opportunity for people to participate by written submissions and the development of a record. Moreover, I think the focus on the length of the record does not reflect either the precedent of the circuit nor the proper approach. The question is, did the proceeding that was held result in the type of record that is adequate for review? And it bears emphasizing, the same essential review will occur regardless of whichever court it's in. It will be a review of whether the EPA had substantial evidence on the record to support its decision. So although it is important under the statute, and Congress intended for this to go to the Court of Appeals and to expedite review of these registration decisions and cancellation decisions, it is still the same process in either court. And let me ask you this. Let's say that this matter, just assume that this matter belonged in the district court. Are you saying that the district court would then just take all these documents and papers and all the rest of it and, you know, have some briefs and then make a decision based on those papers? Would the district court be, in your mind, precluded from hearing additional argument, taking additional evidence? Absolutely. Hearing what? It would be precluded from taking additional evidence. So all the district court then could do would be just to take this huge volume of papers and make some decisions and then where would it go from there? If it had gone to district court, they could then, a party could appeal to the Court of Appeals. But what happens is EPA would review de novo. It would be the exact same review as though it had never been filed in district court at all. There is no deference to the district court decision. And there's no ability to produce extra evidence at the district court level. It's important for the administrative review has to be on the evidence that was presented to the agency. And the parties managed to take, fully participate in this process. They had the opportunity to present evidence. They filed declarations from expert witnesses. And then it is reviewed based on how, whether the EPA's conclusions based on the evidence before it were reasonable conclusions. And that is the same regardless of whichever court it is in. So nothing is going to happen. Under other environmental statutes like, you know, the Environmental Protection Act, they go, they'll go to the district court. And the district court holds hearings. Sometimes they last for days. And witnesses come and testify and documents are introduced and all this and that. You don't do that here. Not at all, Your Honor. And it all depends on the nature of the decision. FAA decisions, for instance, are reviewed immediately in the Court of Appeals. Clean Air Act, some issues are reviewed immediately in the Court of Appeals. It is not unheard of for there to be immediate Court of Appeal review, particularly when you do have a process that will create an adequate record for review as occurred here. There were numerous opportunities to comment. EPA reviewed those comments, responded to them. And its decision articulates a reason under the statute for its conclusion, which I would emphasize was a balanced conclusion. It has decided to cancel all AZM usage by 2012. But it is required under the statute to also consider other factors. And it decided to phase out that usage. It also managed to impose numerous new mitigation procedures. So less AZM will be used year to year. And greater protective measures have been put in place to protect workers. So this decision, the United States was fully prepared to defend this decision on the merits. But the jurisdictional provision is clear. Section 16B places exclusive jurisdiction in the Court of Appeals over any challenge to the validity of an order issued by the administrator following a public hearing. There was an order. The only issue is whether it was a public hearing. And under Northwest Food Processors and Humane Society, there was. There was a full opportunity for people to submit their views, hear written materials. And there was a record adequate for review. Is there a claim by your opponent that there's some material which didn't get in the record, which would get in the record because of the, if it went to district court? Not to my knowledge. They made no claim that they were unable to present materials. Ms. Boyles, would you come back up? Thank you, Your Honor. And they had, they presented all their materials to the agency. They had that opportunity. And all that material is now in it. And moreover, if they did present new material, you couldn't judge the agency's decision on that basis because it wouldn't, the agency can't be expected to assess material that wasn't before it when it considered, when it considered its decision. Also, just to return quickly to one other thing, the legislative history does also support the interpretation that has previously been adopted by this Court. Congress said in the committee report for this provision, it is very clear we want this to be simple. Matters that have been administratively heard and decided should go to the Court of Appeals. It is those matters which have not been heard or decided belong in the district court. For all of these reasons, we would ask this Court to affirm the district court and to reaffirm the bright line rule it laid out in Northwest Food Processors. If there are any further questions, I will yield my time to the interveners. Thank you. Thank you, counsel. May it please the Court. My name is David Weinberg. I represent Makashima Gan, the manufacturer of AZM. The government has yielded five minutes to the interveners, and I will try to use four and leave one for Ms. Ginsburg, who is counsel to the manufacturer of 4-8, the other product at issue here. Let me try to address two of the issues about which you have expressed concern. First, the question of how many farm workers AZM is killing. The panel should recognize that, in fact, AZM as now being used is not killing any farm workers. What EPA has done. Just like cigarettes never kill. No, no, sir, different situation. What EPA has done in this context over the last decade has been to evaluate the effects of long-term exposure of farm workers to a whole series of different chemicals, one of which is AZM. They've also evaluated the environmental impact. In the course of doing that, EPA has concluded that long-term exposures at some levels and short-term exposures at much higher levels do affect health. And the result of that is that the agency has limited the use of this product both in volume and on crops. And what we're talking about here today is whether that use continues at a reduced rate for four more years, which is what EPA decided, or whether it should terminate before the end of that four more years. Now, keep in mind, the appellants here have not asked that the court, whether the district court or court of appeals, send this back to EPA with a direction that EPA be told to not allow the sale of AZM. What they have asked for is an administrative remedy that the matter be sent back to EPA for EPA to reconsider based on some factors that they think EPA didn't give adequate notice of. I don't diminish the significance of concern about worker exposures to chemicals, but I do believe that your honors must recognize that EPA has spent a lot of time looking at this and reached the view that if this chemical is used in a reduced rates for a limited period of time, it will not have an unacceptable health effect on the farm workers. Now, I believe we were informed by the farm workers that there's been a request to extend it four more years, is that correct? No, no, that's not correct. What has been requested in the last two weeks is a slight change in the use rates that can be used on a couple of crops during the next two years. It is not a request to extend beyond the four year, beyond the 2012 deadline. What crops are you talking about? I'm sorry? What crops are you talking about? I believe it's blueberries and there may be one other there. Blueberries. This product is still allowed to be used on apples, pears, blueberries, two other fruits and parsley. Cherries perhaps. Cherries, I believe. Oh, yeah. And the reason for that is that there are no good alternatives, or EPA concluded there were no good alternatives when they made this decision. Now, the second point I want to touch on in the limited time I have is a very important point your honors have asked about the district court role here. And I think this is very important to understand. Whether this case is heard by the district court or a court of appeals, the court will not be taking additional evidence. This is a record case. The question for the reviewing court is did EPA act arbitrary and capriciously? Did they have a basis for making the determinations that they made? You have in front of you, and the appellants have pointed very clearly to, a August 16th, pardon me, November 16th court decision in which the agency stated 2006, pardon me, November 16th, 2006 decision in which the agency laid out its decision. That's where they said we're going to cancel all but a handful of these uses. We're going to let a few of them continue for a couple more years, and we're going to let a half dozen continue into 2012. And they laid it out, crop by crop, as to what their rationale was. Now, there are a lot of documents in the record, but whether it's the district court or the court of appeals, counsel is going to focus on particular- It's too late, am I right? It's too late to file this matter in the court of appeals. It is too late to file this particular matter, but as I think appellant counsel indicated, she's concerned about going forward with regard to other situations. And what's critically important here is establishing the law clearly, because there will be other questions that arise. You're going to get some time. I am indeed, your honor. And let me just, and finally, my last few seconds, urge that with regard to the question of Northwest food processors, I think the key paragraph your honors will want to look at is at page 1077 of the second site. That's 866F2nd. I think if you read what your court said at that point in time about public hearing, it's quite evident that the court was not stating a rule limited solely to situations in which there had been an administrative law judge decision. The court was quite clear in saying, well, there had been an administrative law judge decision there. Here were the things that were important in building the record, and all of those things are present here. Thank you, your honor. Well, I'm sure that when that was written, you know, the judges were primarily focused on the matter that was right before them. And this is my first experience with this statute. Well, if I may respond to that, your honor, without detracting from time from my opposing counsel, I'd simply say, the Congress, when it adopted the section under which all of this arises, section four of the pesticide law, was aware of those decisions. Made it very clear explicitly in section four. I'd like to talk to the Congressmen and have them discuss each of those cases with me. So, you know, that's another fiction in the law. But if they were totally aware, they certainly came up with a rather complex piece of legislation, which I'm sure is a product of a lot of compromises and all that. That's the way these things work. Okay? Thank you, your honor. Good morning, your honors. And thank you for allowing me this minute that I have. I'll try to be very efficient. My name is Beth Ginsberg. I'm here on behalf of Gowan Company, the sole manufacturer of FOSMET. I have three points to make. Your honor, the public, what constitutes a public hearing was decided by the Supreme Court in Florida Power versus Lorien? You asked that question, wanted to know which case it was. It's 470 U.S. 729. And it establishes quite firmly that notice in common suffices to satisfy the public hearing requirement. Secondly, in answer to your questions, Judge Pregerson, we know you're concerned about the safety of pesticides. And you expressed, all three of the justices this morning, expressed a lot of concern about pesticides. And in fact, I want to point out that Congress shared those concerns. And Congress specifically wanted to establish a single track, efficient, speedy review of these pesticide re-registration decisions. It said all these pesticides had to be re-registered within eight years. It established a very elaborate five-part process in section four. And it established a deadline suit, cause of action, for citizens groups to sue. It wanted it all done in eight years. There's no way it could be done in eight years if you start in the district court and then go to the Court of Appeals. Therefore, it clearly established in section 4N, review in the Court of Appeals. I think it's absolutely dispositive when you look at the legislative history, to the extent there's any ambiguity as to where to file, that legislative history answers the question. We started off with questions to Ms. Boyle about why didn't she file in the district court? I ask myself that as well. Because whenever there's any ambiguity as to where you should file, no, you should file protectively in both courts. These appellants were very aware of the ambiguity. They have been very active in these cases. It was their obligation to prophylactically file in both courts, and they didn't. And I'd say at this point, unfortunately, they've made the wrong bet. And the last point I want to make, Your Honors, is that this court's decision in AMVAC was also very clear. AMVAC endorsed the Humane Society case and the Castle case. And it said very broadly that 16B applies to all substantive FFRA decisions. All decisions that are substantive on the basis of a record have to go to the Court of Appeals. That's what this court has previously said. So I would commend that case to this court. And unless there are further questions, I thank you again for my one minute. So what would the Court of Appeals get? The Court of Appeals gets the exact same record that the district court would get. And that is the administrative record that EPA compiled. There are no declarations. There are no deposition transcripts. This is an administrative record review classic case that the Court of Appeal is absolutely as equally suited to address as the district court. You don't have to make evidentiary decisions in the first instance, because it's record review. Can you think of another situation where the raw administrative record where there's not been a hearing in the adjudicatory sense is then sent right up to the Court of Appeals? Yes, Your Honor, I can think of many in the environmental context. In the Clean Water Act, challenges to effluent limitation guideline rules heard in the first instance in the Court of Appeals because there's an adequate administrative record. There are TSCA decisions that are heard in the first instance in the Court of Appeals. There are many Clean Air Acts. I had probably one of the biggest Clean Water Acts involving sewage. And it went through the district court. Yes, Your Honor, there are. If I may, Your Honor, there are. A lot of time on it. And there was a consent decree. And I kept that case when I came to the Court of Appeals. And I started it in 76. And we completed the construction under the decree in something like 98. And I did such a good job in LA, I'm known as the sludge judge. So what do you mean I shouldn't have had a hearing and all that? I should have gone right up to the Court of Appeals? With all due respect, Your Honor, that was a case where the record was headed to be developed in the first instance in the courts. Here, the record was developed in the first instance administratively. The role of the court is to look at it under a deferential administrative procedure act standard of review. If you require this to be heard in the district court, you would have the same process done twice with years intervening. Meanwhile, we don't have a decision on whether or not AZM or FOSMET should continue to be registered pesticides. And your concerns about- It could come to the Court of Appeals had it been handled by an administrative law judge and had a hearing and all this and that. Then we'd get it. You could do it that way, but I don't remember being involved in any circuit cases where it just came right to us without any type of adjudication before an administrative agency or before the district court. In our briefs, Your Honor, we did cite- That's what's fascinating about this job. You never know what the next day will bring. Yes, understood. Your Honor, if it would help, we did in our merits brief, we did cite other examples where the courts of appeal do hear of these kinds of cases in the first instance. And I would commend you to our briefs. And all I would say, Your Honor, is because of the standard of review that is set forth here under the Administrative Procedure Act, all you'd be doing is duplicating the effort of the district court and causing an extra delay as to the finality of the status of these pesticides, which you've expressed concern about. How about the district judge would just issue a preliminary injunction? Stops it. That's what I've done. The district court doesn't have authority. What? The district court actually wouldn't have that authority, Your Honor, because we're here under a deferential Administrative Procedure Act standard of review. The only thing the district court could do would be to remand back to the agency for them to rethink it and re-promulgate a new re-registration eligibility decision. And during that time, we'd be up here on appeal getting a second look at the same question. And I think Congress said, listen, since it's the same standard of review, we want to avoid this two-track process. We want a speedy answer. Congress doesn't say anything. What congressman said that? It's in the legislative history, Your Honor. That's how you read the legislative history. Well, actually, I don't think there's a debate about the legislative history. There's a debate about the plain language. I'm not talking about Congress. You know, one of my good friends who's passed away was a leader in the Congress. And we practiced law within 100 yards of each other and Van Nuys. And I asked him one time. He was a floor leader of, well, that was another situation. I said, when you voted for this piece of legislation, what was your legislative intent? And he looked at me and he said, why do you ask that question? I said, because that's what we talk about, legislative intent. He says, that's crazy. He said, my intent when I voted for it was to support legislation that the leadership told me it was the best we could get under the circumstances. That was my intent. And that's probably the intent of the vast majority of them. So it's just a fiction. Thank you. But nobody wants to listen to me anymore, anyway. OK. Thank you, your honors. Yeah. Ms. Boyles, would you address a point that was made by both counsel in response, which is that there is no difference between the scope of review of the administrative record were this to be seen first in the district court from that which we see. Is that correct? Actually, your honor, I would disagree with that. Why? In this case, we actually did present declarations from experts in the district court, which were subjects to motion to strike, but were then admitted by the court under the recognized exceptions to record review. There were also, in this case, several motions to complete the record and motions to supplement the record. Things happen in district courts or in administrative proceedings that are really quasi-adjudicative proceedings that make a difference to how a case comes before an appellate court. The diminishment of the importance of the district court role or a prior trial court level type proceeding in the agency by my imposing counsel doesn't make sense with how we all understand how this kind of review works. There is usually that first trial level cut, even in administrative record review, even in APA cases, before the issues come to this court. And I want to stress, your honor, that in this kind of challenge, a challenge to retention of pesticide uses. The declarations were filed over objections of the appellees. The declaration was a declaration of an expert, Dr. Frank Ackerman. And he's an expert on cost-benefit analysis when it comes to using environmental issues and pesticides. You know, it would have been so easy for Congress to have said, after a hearing before an administrative law judge, then go to the Court of Appeals. They used a very broad phrase whose plain meaning is what I told you it was. Give people a chance to comment. I think, your honor, that we're going to have to disagree on that, you and I. You will find out. I suspect so, sir. But 16b uses more than public hearing. It uses the terms parties to the proceeding. It uses the terms after people who are adversely affected. It talks about orders that issue that should be reviewed on substantial evidence. The way that statute section reads talks about something more than merely submitting comments, mailing comments into a vacuum. The rule pressed by my opponents here means that jurisdiction is based on the process that EPA chooses to give people. And that is not, in my opinion, a sound way for a statute to be interpreted. I would urge this court to go back to the language of the statute and see how Congress put 16a first, and so that there was district court review. Congress chose for there to be district court review, except in these very limited situations where you had something that already looked like district court review. And I would like to direct the court to the Ninth Circuit brief that the EPA submitted in response to the amicus brief here. It was their brief in Northwest Food Processes, Your Honor. And they talk about how the administrative decision is analogous to a district court decision. They talk about the amount of process that was available in the Northwest Food Processes case. Let me take you back to Mr. Ackerman's cost benefit analysis expertise. That was not before the EPA? That's correct, Your Honor. And how could we or the district court decide that the EPA's determination was arbitrary under APA 7? The record review exceptions, Your Honor, include the explanations of technical issues which are helpful to the court. That's in the Love v. Thomas case, which is also, coincidentally, a pesticide case. And is the declaration simply explains to the district court some terms? That's one thing. But if it's substantive testimony, it should be before the EPA in order to label the EPA's determination as being an abuse of discretion. The district court accepted the declaration under the exceptions to explain the problems with the decision, Your Honor. To explain the problem. That's like a brief. It was an expert declaration, Your Honor. The court admitted there were motions to strike associated with it. I would ask this court to hold that commenting alone is not the same as a public hearing. Reverse the opinion of the district court. We were fully briefed below. And we would like to go back and get a ruling on the merits. Let me ask you a question. Here you have this. I was thinking about this, too. Here you have a case. Let's say that it should have been filed initially in the Court of Appeals. But it was filed in the district court. Now, sometimes it's not too clear. And we have the argument here that it should have been filed in one place or the other. And I suppose you should have had a protective filing. But you didn't. So here's what I was just wondering. That you filed it in the district court. And you went through this whole process. And then the interveners come in and say, oh, wait a minute. You should have filed it under P. And so the district court has no jurisdiction. Now, we're all in the same federal system. And what I'm wondering is, you filed it, let's say, in the wrong court. But why can't the Court of Appeals accept that filing? And if there's a time limit, I have to check this out, and use a tolling doctrine, or an equitable tolling doctrine, and determine that if you follow, if you do that, that the filing, that's 30 days. What is it, 30 days? 60 days, Your Honor. 60 days is complied with. And then have the entire matter come to us directly, with all the records, and all the papers, and everything else. And then we conduct a review as though the matter had been filed with us initially. Your Honor, I would certainly support that, if the Court is not going to reverse the district court. Think about it. Don't throw talk. Don't throw talk. Yeah, absolutely. Though I do think we need an answer from this Court to guide the future. Whether or not we did it right in this case is one, obviously, very important issue. But how it goes forward in the future is also very important. And I think it needs to be clarified beyond just the size of the record. The future may not be looking too good. So I don't know. Well, I'd like to hear the government on that. Yeah. Thank you, Your Honor. I used to do that with traffic tickets in the municipal court. Your Honor, I believe the issue is  from the district court to the court of appeals. 28 U.S.C. Section 1631 does provide transfer of cases. However, it does not allow it when it would not have been timely filed in the court it is being transferred to. So it is not available here. And American Bird Conservancy, which was filed helpfully by the intervenors in their 28J letter, makes it clear that this statute of limitations could not be told. Moreover, I can't imagine any that they should. First, plaintiffs could have moved in district court. But they couldn't have, because there is no equitable tolling here. They were fully aware. The government contacted them at the day the decision was made or the day after. It was on the website. They were aware. So the claim accrued then. So there is no availability of equitable tolling. And transfer is not possible when it would not be timely in the court it is being transferred to. You're very well-prepared on that court. Yeah, that's really good. So we'll have to look at the statute. But you've looked it up. I was curious. And it is not available to the plaintiffs. But thank you, Your Honor. But you know, it happens in district courts or even in our court, when something is filed with us that belongs in another circuit, we just accept the filing and send it to the other circuit. And or maybe it belonged in the district court. So we accept the filing and send it to the district court, because it's all one system. Absolutely.  But there's no equitable tolling, because you told the farmworkers people right off that they were in the wrong pew. You told them they were in the right pew, didn't you? Well, we didn't express a view on that pew. We said that we did. We heard counsel say that you did, but. We said that Section 4M, and the government still believes that Section 4M did not place jurisdiction in the Court of Appeals. The government had not read Northwest Food Processors and made a mistake. If they had, we would have informed them that the president squarely places them in the Court of Appeals. But the government didn't address that issue, because the original jurisdictional issue was a different one. Well, why didn't you just tell me a few minutes ago? I apologize, Your Honor. Why didn't you tell me a few minutes ago? I thought you said that you notified the other side that they filed in the wrong court. No, I apologize. It may have been unclear. We told them we had made the decision. They knew the decision had been made. The statute of limitations is a strict jurisdictional statute. It has to be read strictly. And you can't accrue something when someone has reasonable notice that with reasonable diligence would tell them to file in the proper court. So they simply don't have that option. Moreover, they didn't move in the district court for this relief. And the district court, it's the court you file in that you get to move initially. And it's the court you file in that gets to make the decision of whether or not to transfer. But they are not within the statute of limitations. They had full notice of the final decision. Let me ask you this. When is the use of this insecticide scheduled to cease? 2012, Your Honor. I thought it was 2010. For some crops, well, for many crops, EPA has already ceased all usage. I believe for some it's 2010. But the final use, there will be no usage of this pesticide after 2012 on any crops. And that cancellation order is already pursuant to this decision, has already issued. This pesticide will not be used under the law as it stands after 2012. Has there been any settlement discussions? I, there were, I believe, settlement discussions in the district court. But on a clear jurisdictional issue, we don't believe the settlement is possible. Moreover, for numerous reasons, mediation and settlement would not be appropriate in this case. But, so, there were originally settlement discussions. Why wouldn't it be appropriate? Well, among other things, it's a jurisdictional issue. The court, it goes to whether or not the court has the authority to issue an order. Moreover, EPA has fully considered all the different interests in this case. I mean, they've considered the ecological effects. They've considered. When did they do that? Throughout the whole notice and comment proceeding, Your Honor. I mean, they. How long ago was that? It's been over, it's been ongoing for the last, for 10 years now. You have another EPA now? Your Honor, I. Another people there. Your Honor, we do not believe settlement would be a possibility here, is my understanding. I thank the court for its time. But it might be, you know, get together with the EPA. Has an EPA administrator been appointed? Yes, Lisa Jackson is the new EPA administrator. But this is a clear jurisdictional issue. We do not believe mediation is available. And settlement is not a possibility at this point, Your Honor. I don't see why, because there's a jurisdictional issue involved, the case can't be settled. It goes to whether or not the court has the authority to enforce an order in the case. Moreover, EPA has fully considered this. It's been finally decided EPA settlement is not available in this case. So you don't want to try to settle this case? We've had multiple discussions earlier. What's your answer is yes. I do not believe, my understanding currently is that we do not want to settle the case. No, Your Honor. I don't quite get your point on the authority of the court. The court case in some way is before us. Yes, Your Honor. You corrected the parties to meet the settlement. We would have that much authority, wouldn't we? I believe you would. But it's, the court has jurisdiction to determine its jurisdiction. But I would also say, this case, there are five other cases where this related issue is at stake. And it's not, and this is the first one of the Court of Appeals. But they've all been stayed while this is here. So it's not as though, I mean, it's not as though we can just negotiate this case. It would be negotiating all of the cases. Moreover, we have had discussions in the past. We don't believe settlement is a potential here, Your Honor. It is my understanding. When was the last time you had a discussion? I don't recall off the top of your head, Your Honor. But I did check to see if settlement was a possibility. In my current understanding, it is not. And with that, I thank the court. We have a wonderful settlement judge, one of the best that ever existed on this earth, Judge Levy in Portland, who's also a farmer. So anyway, you might think about that. Well, thank you, Your Honor. Okay. All right. Thank you. The matter will stand submitted.
judges: Pregerson, Noonan, Bea